IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED
IN OPEN COURT

JUN 29 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN ROBERT FISCHEL,<br><br>*Defendant.* | Case No. 1:22-CR-107 |

## STATEMENT OF FACTS

The United States and the defendant, John R. Fischel, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in and around 2018 and continuing through in and around March 2022, within the Eastern District of Virginia, and elsewhere, the defendant (hereinafter, FISCHEL), did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit money laundering, in violation of 18 U.S.C. § 1956(h). Specifically, the defendant and his co-conspirators, knowing that the property involved in financial transactions represented the proceeds of a conspiracy to distribute controlled substances, did knowingly conduct such financial transactions knowing that the transactions were designed in whole or in part,

    a. To conceal and disguise the nature, location, source, ownership, and/or control of the proceeds of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

    b. To avoid a transaction reporting requirement under State or Federal law, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii).

2. The purpose and objective of this conspiracy was to unlawfully distribute marijuana, THC, and other marijuana-derived products, and to launder the resultant proceeds.

3. At all times relevant to the criminal information, FISCHEL's co-conspirator, C.P., was the owner and Chief Executive Officer of JointVentures LLC ("JointVentures"), a company that openly sold recreational marijuana and marijuana-derived products in the greater Washington DC metropolitan area. JointVentures LLC was never licensed as a medical marijuana dispensary in Virginia, the District of Columbia, or anywhere else. A November 2018 filing with the D.C. Department of Consumer and Regulatory Affairs, signed by FISCHEL, describes the business as being involved in "e-commerce sales of smoke shop accessories." This was not accurate.

4. As part of its operations, JointVentures maintained a professionally designed website through which it facilitated sales orders for its marijuana products, to include raw leaf marijuana, preloaded THC vape cartridges, assorted marijuana edibles, THC wax products, and other items. The website allowed customers to create a profile through which they could place orders for various amounts of JointVentures's marijuana and marijuana-derived products.

5. JointVentures operated the distribution and delivery side of the enterprise out of two units of a residential apartment building located at 1125 12th Street NW, Washington DC 20005. JointVentures delivered its products to customers using delivery drivers or cyclists, similar to food delivery services like UberEats or DoorDash, and dealt primarily in cash.

6. In and around 2018, FISCHEL—who is a Certified Public Accountant—joined the conspiracy when he was hired on as the Chief Financial Officer of the enterprise; he was paid an

annual salary of approximately $72,000. FISCHEL, along with C.P., was technically employed by an entity known as CDP Holdings LLC. Other members of the conspiracy included:

    a. N.M., who worked as the JointVentures office manager and maintained the physical space at 1125 12th Street NW;

    b. S.P. (C.P.'s brother), who assisted C.P. with running the business and depositing cash proceeds from JointVentures's sales;

    c. H.P. (C.P.'s brother), who created product photos and marketing for the JointVentures website;

    d. J.M., who worked at the physical space at 1125 12th Street NW and corresponded with JointVentures customers.

7. With FISCHEL's assistance, C.P. operated the businesses in the guise of several seemingly legitimate businesses. Aside from JointVentures and CDP Holdings LLC, these entities include Bulb Wellness, Refresh Wellness, Sail Software, JD Flowers, and others. C.P. controlled each of these entities. During the entirety of his association with C.P. and JointVentures, FISCHEL was aware that businesses funds came from the unlawful sale of marijuana and other THC products.

8. In his role as CFO of the enterprise, FISCHEL aided C.P. in creating and incorporating business entities, and opening and maintaining bank accounts. For example, on July 24, 2018, FISCHEL opened a TD Bank account for Bulb Wellness at the TD Bank branch in Leesburg, Virginia. On May 18, 2021, FISCHEL and C.P. opened a business checking account with Truist Bank in the District of Columbia on behalf of JointVentures. On the signature card for the account, FISCHEL signed as the "CFO" and C.P. signed as the "CEO." On October 26, 2021,

FISCHEL and C.P. opened a business checking account with Truist Bank in Sterling, Virginia on behalf of Refresh Wellness.

9. FISCHEL also maintained the daily "cash on hand" balance sheet for JointVentures. This record accounted for all daily credits and debits associated with JointVentures's marijuana/THC business. FISCHEL maintained these records electronically at his home in Loudoun County, Virginia.

10. During the relevant period, the conspiracy operated bank accounts at several different financial institutions in the names of its various businesses, including JointVentures. Members the conspiracy used these accounts to deposit cash earned from the unlawful sale of marijuana/THC products. Members of the conspiracy, including FISCHEL, also used these accounts to pay the conspiracy's operating expenses—such as paying wholesalers for product, and purchasing packaging material and rent on their physical spaces—and conduct other transactions designed to disguise the location or source of the funds.

11. Several financial institutions closed accounts associated with JointVentures. In response, at some point during the existence of the conspiracy, FISCHEL directed JointVentures employees to deposit the case proceeds from the sales in increments of less than $10,000, in order to avoid scrutiny by the banks and to disguise the nature and source of cash they were depositing and transacting.

12. For example, during the month of June 2020, the following deposits were made into the TD Bank account ending in 7362 belonging to JointVentures LLC:

| Date | Amount | Location |
|---|---|---|
| 6/2/2020 | $5,000 | Tenleytown (Washington DC) |
| 6/10/2020 | $5,000 | Alexandria, Virginia |
| 6/11/2020 | $5,000 | Tenleytown (Washington DC) |

| | | |
|---|---|---|
| 6/12/2020 | $6,000 | Falls Church, Virginia |
| 6/17/2020 | $6,000 | Alexandria, Virginia |
| 6/29/2020 | $9,000 | Alexandria, Virginia |

13. Altogether, these six deposits totaled $36,000 in cash. Also in June 2020, the TD Bank account ending in 7362 made seven outgoing wires to a BBVA account ending in 8473 belonging to CDP Holdings, LLC., for a total of $32,500. Each of these wires was also in amounts less than $10,000.

14. On June 1, 2021, FISCHEL emailed C.P. and another employee of JointVentures with the cash deposit schedule going forward. The schedule directed employees to deposit $3,000 in cash every Monday, Wednesday, and Friday into the JointVentures account at SunTrust Bank (now Truist). The schedule further directed employees to deposit $9,000 in the CDP Holdings account at Bank of America every Tuesday; $7,000 in the Refresh Wellness account at Bank of America every Wednesday, and $6,250 in the Sail Software account at an unspecified financial institution. FISCHEL wrote in the email, "To the extent possible, I'd like to keep to this schedule. You'll notice that it's not more than 2 banks in any one day and not more than $9,000 for the week [per account]. I'm attempting to minimize the deposits into JV [JointVentures] in order to prolong the account."

15. Throughout the duration of the conspiracy, JointVentures and C.P.'s associated entities earned gross profits of at least $2,535,446 from the distribution of marijuana, THC, and other marijuana-derived products.

16. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the

defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

17. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

18. If the defendant breaches the plea agreement, then pursuant to the plea agreement, she waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 4/19/2022

By: _____
Katherine E. Rumbaugh
David A. Peters
Assistant United States Attorneys

Defendant's Stipulation and Signature

After consulting with my attorneys, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 4/18/22

John R. Fischel

Defense Counsel's Signature

We are the attorneys for Defendant in this case, John Fischel. We have carefully reviewed the above Statement of Facts with him. To our knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 4/18/22

Danny Onorato
Stuart Sears
Counsel for the Defendant

7